UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Jane Doe,

    Plaintiff,

v.

Genimous Interactive Investment Co., Ltd.,
Eightpoint Technologies Ltd. SEZC, and
Eightpoint Interactive, Inc. f/k/a Spigot, Inc.

    Defendants.

JURY TRIAL DEMANDED
Case No.:  25-cv-01091

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, **JANE DOE**, an individual, by and through the undersigned counsel, and hereby files this Complaint against the Defendants, **GENIMOUS INTERACTIVE INVESTMENT CO., LTD., EIGHTPOINT TECHNOLOGIES LTD. SEZC**, and **EIGHTPOINT INTERACTIVE, INC.** f/k/a **SPIGOT, INC.**, and as grounds therefore states as follows:

## INTRODUCTION

1.     This is an action for violations of the Trafficking Victims Protection Act (TVPA), negligence, and vicarious liability arising from a sexual battery that occurred on December 9, 2023, when Hongda Lu, a Chinese National billionaire businessman who sits as the Chairman of the Board of Directors of Genimous Technology Co, Ltd., raped Jane Doe at a party for a Genimous subsidiary which he controls and is otherwise beholden to him.

## JURISDICTION, VENUE, AND TIMELINESS

2.     This action is brought pursuant to various federal and state statues, including the federal TVPA, 18 U.S.C. § 1591 through § 1595. This Court has federal question subject-matter

1

jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under the TVPA, 18 U.S.C. § 1595.

3.    This Court also has supplemental jurisdiction over the state law claims recounted below pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein are part of a uniform pattern and practice and form part of the same case or controversy.

4.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events occurred in the Middle District of Florida.

## PARTIES

5.    Plaintiff, **JANE DOE,** at all times was a twenty-seven-year-old individual who resides in Lee County, Florida.

6.    **HONGDA LU,** at the time he raped Jane Doe, was a fifty-four-year-old citizen of China who was acting under the employment of Genimous and through his position as the Chairman of Genimous Technology Co., Ltd., parent companies to the named Corporate Defendants at the time of the events described herein.

7.    With knowledge of the gravity of the situation, Hongda Lu has taken intentional actions in concert with Corporate Defendants to avoid availing himself of the jurisdiction of this Court in an effort to avoid civil prosecution. Likewise, Corporate Defendants have refused to provide information regarding Lu's whereabouts in a continued effort to ratify, condone and conceal his conduct, all further evidence of the consciousness of guilt of both Lu and Corporate Defendants.

8.    Hongda Lu is the effective Ultimate Beneficial Officer ("UBO") of the following Corporate Structure:



9.    Hongda Lu established, operated, and controlled numerous companies under the Genimous umbrella which he runs in part through the Cayman Islands—a known tax haven. Sexual impropriety and sexual abuse are commonplace for Lu when in China, and the Corporate Defendants have accepted that aspect of his behavior, working together with him to enable his sexual abuse and to take efforts to conceal it. His reputation as a sexual abuser is well-known, well-accepted, and well-concealed by the Corporate Defendants, and has persisted for years.

10.    Due to Hongda Lu's position, each of the named Corporate Defendants' existence relies on Hongda Lu, and Hongda Lu knows the Corporate Defendants will provide him the opportunity to sexually assault American women and cover up his criminal activities. Lu's rampant sexual abuse has been protected by the executives for the Corporate Defendants so extensively that any time that anyone has spoken out against Mr. Lu's sexual exploitation or abuse of women, those individuals have been targeted, harassed, the subject of slander, and have suffered reputational and other harm including termination from employment.

11.    Defendant, **GENIMOUS INTERACTIVE INVESTMENT CO., LTD.** (hereinafter "**Genimous**") is a subsidiary of Genimous Technology Co., Ltd., and was incorporated in the United States as an intermediary subsidiary to inject Genimous Investment

(Hong Kong) Co., Ltd. funds into Eightpoint Interactive, Inc. and Eightpoint Technologies Ltd. SEZC (identified together in Corporate filings as the "Eightpoint Group").

12.     Defendant, **EIGHTPOINT INTERACTIVE, INC. f/k/a Spigot, Inc.** (hereinafter "**Spigot**"), is a Nevada Foreign Profit Corporation with an office location in Fort Myers, Florida, and is a subsidiary of Genimous.

13.     Defendant, **EIGHTPOINT TECHNOLOGIES LTD. SEZC** (hereinafter "**Eightpoint**"), is a Foreign Profit Corporation and subsidiary of Genimous with its principal place of business in Grand Cayman, Cayman Islands.

14.     The sexual battery of Jane Doe by Hongda Lu occurred as a direct result of the participation in sex trafficking and negligence of Genimous, Spigot, and Eightpoint Tech (collectively referred to hereinafter as the "**Corporate Defendants**"), enabling the intentionally tortious conduct of Chairman Lu, for which the Corporate Defendants are liable.

15.     The Corporate Defendants are responsible, under Florida law and otherwise, for the acts of its officers, directors, employees, agents, and/or representatives, including the material acts described in this Complaint that were committed by actors of the Corporate Defendants who acted within the actual and apparent scope of their employment.

16.     Additionally, Lu was aided in accomplishing his heinous sexual crimes and tortious conduct through his legal relationship with the Corporate Defendants. But for Lu's position with Genimous, and consequently the Corporate Defendants' dependence on Chairman Lu, he would not have been afforded the opportunity to prey upon young women, including Jane Doe, and engage in tortious conduct.

17.     Jane Doe is identified by pseudonym in this Complaint pursuant to Fed. R. Civ. P. 10(a) so as to protect her privacy rights due to the sensitive and highly personal nature of this

matter which involves a sexual assault committed by a highly influential, wealthy, and powerful individual. As such, Plaintiff seeks a protective order under Fed. R. Civ. P. 5.2.

<u>FACTUAL ALLEGATIONS</u>

**A.  <u>The Corporate Defendants Enforced a Party-Centric Work Culture.</u>**

18.    Given that Defendants Spigot and Eightpoint Tech are subsidiaries of Defendant Genimous operating under the same Eightpoint Group brand, it was not uncommon for the closely affiliated sister companies to have joint company events where upper management from their shared parent company, Defendant Genimous, would also be in attendance. For example:



19.    The culture amongst Corporate Defendants, as evidenced by their online presence, was described at all material times by its employees and even the company's website as a "work hard, play hard," environment.[1]

---

[1] EIGHTPOINT, Our Team | Eightpoint, https://eightpoint.io/people (last visited Aug. 5, 2025) (noting "Work Hard, Play Hard" on the company's website).



20.    At all times material hereto, it was well-known to employees that drinking and excessive partying was engrained in the company's culture, encouraged, and even forced. There were times when employees of Corporate Defendants had to be taken to the hospital after being pressured into taking shots and drinking excessively at the Corporate Defendants' events.

21.    The Corporate Defendants openly fostered, encouraged, and normalized day-drinking on-the-job, in office, and during regular business hours, with this conduct even being promoted on the company's official social media platforms.



22.    It follows that the tone set for off-site company events under the Genimous umbrella such as boat days, holiday parties, and corporate trips included excessive drinking, rowdy behavior, and heavy partying. Itineraries were routinely centered around the employees' inevitable intoxication, including convenient hotel accommodations, hours of scheduled drinking, pre-booked drinking activities, and afterparties where the main focus of executives of each of the Corporate Defendants was to cater to Mr. Hongda Lu, including enabling his known sexual proclivities, every time he was going to be in attendance.

B.  **Hongda Lu's History of Abuse was Extensive, Notorious, and Well-Known to Corporate Defendants**

23.     Hongda Lu is both Chairman for Genimous Technology Co., Ltd. and the driving force behind the Corporate Defendants' "play hard" culture.

24.     When Lu would visit the subsidiary Corporate Defendants in the United States and in the Cayman Islands, he was treated as the Top Senior Executive that he was, triggering company-wide celebrations in his honor, where the mandated protocol was to drink and party as much as possible, with the main objective to impress and satisfy Lu at all costs.

25.     Unfortunately, excessive alcohol consumption was not the extent of Lu's known proclivities, as his penchant for sexual harassment and sexual abuse of young women was equally well-known and accepted by the Corporate Defendants.

26.     On each visit, Lu was given absolute deference and was the de facto controller of the Corporate Defendants.

27.     For Lu, these Corporate Defendants' gatherings were more than social events; they were opportunities created for Lu by the Corporate Defendants. It was in this exact environment that Lu—emboldened by alcohol, the encouragement and support of his coworkers, and his unchecked power—was able to repeatedly sexually assault women, including, at times, employees of Corporate Defendants.

28.     Prior to Jane Doe's horrific experience with Lu, he had already similarly mistreated and sexually abused other young females, including female employees of Defendant Eightpoint, of which agents, employees, and representatives of the Corporate Defendants were acutely aware.

29.     Despite this well-known history and knowledge, each of the Corporate Defendants refused to take remedial measures or discipline Lu for his egregious conduct and criminal actions,

and instead, continued to host events in his honor at every opportunity and cover up his criminal assaults.

30.    Lu knew he would never face discipline for his conduct. In fact, because he was treated as an Ultimate Beneficial Owner (UBO) of the Corporate Defendants and given deference as the highest-ranking authority figure at each company event he attended, he made the rules and everyone else encouraged and enabled his sexually abusive conduct.

31.    Consequently, Lu visited with multiple purposes including for the intended purpose of committing a sexual assault against a female before returning to China, and Corporate Defendants not only knew that but also knew that if anyone challenged him, that person would be removed from the company or suffer negative consequences within the company.

32.    In October 2019, Defendant Eightpoint Tech CEO informed staff members, "our guests from Genimous China will be in the office starting around 9/9:30 in the morning. We'll be in the office until lunchtime, then cutting out to show them some sights. Back in the office Friday morning. Be sure to introduce yourselves 😊." It was customary during these trips for high level management to request Eightpoint Tech employees make themselves available to spend time with and entertain Lu as he was the most important figure in the Eightpoint company.

33.    These requests often involved high level management requesting that female employees take Lu out where excessive drinking always occurred. The female employees did not feel like they had any choice but to oblige to make the head of the company—the man in charge of the financial livelihood of the company and their employment—happy.

34.    On one occasion while aboard an Eightpoint boat party, Lu sexually assaulted an Eightpoint employee in the presence of other employees and executives. This boat party occurred

with the direct knowledge of two other Defendant Genimous Board Members who respectively ran Spigot and Eightpoint at the time.

35.    The Corporate Defendants and the employee's direct manager were made aware of the sexual harassment and sexual assault, and other violations that took place during Corporate Defendants' boat party yet affirmatively chose to take no action against Lu.

36.    On another occasion in the Cayman Islands—a location where Spigot and Eightpoint continue to engage in substantial business—another employee of Eightpoint was forced to drink with Lu, where she was forcibly raped by Lu.

37.    On that occasion, his victim was brave enough to report his rape to the Cayman police. Once the police were called, they went to investigate the hotel room, only to find that Lu had the room cleaned and removed of all evidence before fleeing the country on a flight back to China. In a final effort to obtain justice on her own behalf, that victim moved forward with filing a complaint against Lu, a fact known to executives and employees of the Corporate Defendants.

38.    Shortly thereafter, Lu proceeded to spread rumors that the victim had filed a false police report. She then proceeded to file a labor complaint, further evincing the Corporate Defendants' well-known knowledge of Lu's propensity to engage in this criminal behavior; however, the Corporate Defendants took Lu's side to protect the rapist and eliminate the victim.

39.    Because she reported being brutally raped by a member of the Board of Directors of Genimous, the parent company to her Defendant Eightpoint employer, she was retaliated against and kicked out of the company.  Lu was never punished, reprimanded, or disciplined by Corporate Defendants nor by any of the Chinese Genimous parent companies.

40.    Hongda Lu is a known serial sexual predator to the Corporate Defendants, beyond the instances that have occurred against women in the Cayman Islands and against Jane Doe.

Executives for the Corporate Defendants' have visited him on business trips in China and personally observed Lu's sexually abusive behavior to be commonplace.

41.     One former employee for Corporate Defendant Spigot who personally witnessed this interaction in China has since been fired.

42.     The Corporate Defendants have direct knowledge of Lu's propensity to engage in criminal sexual conduct, are aware of specific instances he has done so, yet repeatedly conceal his criminal behavior and set up future events to allow him to repeat his sexually abusive behavior.

43.     Lu's repeated pattern of sexual harassment, assault, and rape, targeting women in both his personal and professional life, can be attributed to the complicit permissiveness, and enabling toleration of the Corporate Defendants.

44.     Through his role on the Board of Directors of Genimous Technology Co., Ltd., Lu's influence has permeated every level of the Corporate Defendant subsidiaries, with employees of each knowing better than to cross him. Within the corporate hierarchy, he was regarded as the supervising corporate officer, the financial lifeline of the Corporate Defendants, and a sexual predator whose abusive behavior was openly seen as an accepted part of doing business.

45.     It was a well-known fact that employees of the Corporate Defendants often warned newer female employees to stay away from Lu when he came to town specifically to avoid getting drunk around him and being raped. These employees would teach other females to keep their distance, watch their drinks, and have an extra layer of caution when around Lu, as his repeated patterns of sexual assault were an open secret within the offices of the Corporate Defendants.

46.     The attitude surrounding Lu created an environment where he was enabled, empowered, and even encouraged to do whatever he wanted to whoever he wanted. All the while, he would get employees of the Corporate Defendants egregiously drunk, become heavily

intoxicated himself, drug and rape unsuspecting women—sometimes employees—fire any liabilities, and return to China with no consequences whatsoever.

47.     But for Lu's Chairman of the Board position, he would not have been able to commit sexual crimes using his power and authority over Corporate Defendants. It was only because of his ability to act on behalf of the Corporate Defendants that Lu was able to sexually abuse multiple women, including Jane Doe, in the course and scope of his employment as Chairman of the Board of Directors of Genimous, at corporate-sponsored events.

48.     Between 2019 and the time that Jane Doe was assaulted in 2023, countless employees of both Corporate Defendants were made aware of Lu's sexually exploitative and abuse behavior. Nevertheless, the Corporate Defendants took no action to punish Lu or prevent his conduct from recurring. Instead, they elected to allow Lu to rape other women and then work in concert with Lu to insulate him from criminal or civil responsibility.

49.     To be clear, the Corporate Defendants knew Hongda Lu would commit sexual assaults against young women in the United States, yet both Hongda Lu and the Corporate Defendants received value from the sexual assaults. For Hongda Lu, he received: being honored at Corporate events, payment for his travel and accommodations, food and alcohol, and allegiance from the Corporate Defendants who would conceal his crimes. The Corporate Defendants were incentivized to enable Hongda Lu to engage in sexual assault and in exchange for enabling Hongda Lu's rape by force received the ultimate benefits: the presence of the UBO, Hongda Lu's guidance and personal mentorship, and the financial support and corporate lifeline that comes along with allegiance to Hongda Lu.

50.     Unfortunately, as a result of the Corporate Defendants' continued tolerance and role in Lu's sexual abuse of women, including their failure to report and take actions to terminate Lu, he attended the 2023 Spigot Holiday afterparty, where he was, as usual, the man of honor.

51.     With an open bar, Lu's travel and hotel room expensed by Corporate Defendants, and an intoxicated and vulnerable victim in Jane Doe, he was once again placed in the perfect position to rape without consequence.

52.     By the time it was Doe's turn as Lu's sexual abuse victim, not only were his actions foreseeable, but they were made possible by the very system created by Corporate Defendants.

**C. Jane Doe is Raped by Hongda Lu at a Corporate Defendants' Event.**

53.     In December 2023, Lu visited Defendant Spigot's Fort Myers, Florida office. During his visit, the entire Spigot staff was gathered for a meeting wherein Mr. Lu was introduced to speak so that the entire company, including individuals attending by Zoom, could receive a company update from the Chairman of the Board of the Genimous parent company. Employees and executives were on high alert leading to Lu's visit and treated Lu as usual despite knowing he was a serial rapist—as the untouchable authority figure who Corporate Defendants refused to challenge due to financial dependence.

54.     Following his in-office company briefing, Lu prepared to attend the "Spigot Swanky Speakeasy" Holiday Party.

55.     Jane Doe was invited as a guest to the 2023 Spigot Holiday Party. Unfortunately for Jane Doe, she was not an employee of any of the Corporate Defendants and consequently lacked the widespread knowledge surrounding Lu's sexually predatory tactics.

56.     Prior to the party, employees, agents, and representatives of Defendant Spigot were included on a stream of emails regarding preparation for the party, the itinerary, vendors, and pre-

arranged transportation. Of note, these emails also included communications with SkyBar—the official afterparty venue.

57.     Every last detail of the itinerary had been thought of and discussed between the venues and Defendant Spigot beforehand, further validating that the entire night was a Defendant Spigot sponsored event.

58.     The beginning of the night began at the Alderman House, a venue location in Fort Myers, Florida. When Jane Doe arrived, there was an open bar, employees playing beer pong, and a significant number of employees from the Corporate Defendants engaged in excessive drinking.

 

59.     The holiday party, like all of the Corporate Defendants' parties and events, encouraged excessive alcohol consumption and non-stop partying.

60.     Jane Doe, like everyone else, was encouraged to engage in excessive drinking. It became apparent to several former Defendant Spigot employees that Jane Doe was severely intoxicated and in a condition that rendered her unable to consent to sex.

61.     Eventually Lu noticed Jane Doe in an intoxicated state and rather than help, he planned his attack of her.

62.     Chairman Lu was not the only Genimous Board of Directors member that was present at the Spigot Holiday Party. At least two other members of the Genimous Board of

Directors were also present; one who was a Defendant Spigot executive and another who was a Defendant Eightpoint executive.

63.    Once the event at the Alderman House ended, the party moved to SkyBar for the company-sanctioned official afterparty that was promoted on Defendant Spigot's company newsletter. There were shuttles that began taking guests from the Spigot party at Alderman House to the Spigot afterparty at Skybar. At this point in the night, Doe could barely stand up straight.

64.    Upon arrival at SkyBar, Defendant Spigot had its own table purchased and took over the bar, specifically to celebrate Lu's attendance.

65.    Consistent with the Corporate Defendants' objectives, during the afterparty, SkyBar began its bottle service, that featured two signs that read, "Spigot Holiday Party" and "Welcome Mr. Lu." Mr. Lu, the intended focal point of the attention, continued encouraging individuals around him, including DOE, to become more and more intoxicated.

  

66.    By the time the night was coming to a close, Lu seeing Jane Doe in a heavily intoxicated state due to his own predatory behavior, saw this as the perfect opportunity to begin his sexual assault of Jane Doe.

67.    Jane Doe intended to go to a house with other employees of Corporate Defendants who were leaving Skybar; however, Lu recognizing her severely intoxicated state, steered Doe

away and walked her to the Luminary Hotel across the street, where Doe believed she would be driven to the intended house.

68.    Executives and employees of Corporate Defendants watched as a helplessly intoxicated Jane Doe walked across the street with Lu.

69.    Rather than making sure Jane Doe got to her intended destination, Lu took Jane Doe to his hotel room.

70.    Due to the intoxication, Doe began vomiting in Lu's hotel room, barely making it to the shower to wash the vomit off of her, before passing out.

71.    Doe then remembers waking up to Lu anally penetrating her with his fingers.

72.    At this point, Doe's level of intoxication was so overwhelming that she was unable to move any of her limbs, stand up, defend herself, shove Lu off of her, or run. She could barely keep her mind awake, struggling to remain conscious, and experiencing full-body immobility.

73.    Doe passed out again but also recalls being woken up to Lu forcibly raping her vaginally. She was able to verbally repeat, "no," over and over again but Lu disregarded the verbal command. Doe, paralyzed and unable to move, was subjected to the rape.

74.    Throughout the night, Lu had taken full advantage of Jane Doe's vulnerable state of extreme intoxication, raping her both anally and vaginally, despite Jane Doe vomiting, passing out, going in and out of consciousness throughout the entirety of the abuse, and verbally saying "no;" all while in a physically helpless state.

75.    When she awoke, Jane Doe went to the local police station where she reported the rape and was given a rape kit, which confirmed traces of Lu's DNA on her body and the horrors from the night before.

76.    When the Fort Myers Police Department obtained a search warrant and inspected Lu's hotel room, he had already fled the United States back to China, as is his modus operandi.

77.    To this day, Lu remains Chairman of Genimous, and the de facto controller of Corporate Defendants, despite his commission of this rape against Jane Doe and the Corporate Defendants' awareness of the rampant sexual abuse that has occurred both in the United States and overseas.

78.    Not only have the Corporate Defendants failed to take adverse employment action against Mr. Lu, they have failed to report his misconduct, discipline him for it, or even formally address it.

79.    Further, the Corporate Defendants have utterly failed to implement and enforce sufficient policies to prevent sexual harassment, assault, or misconduct, including at company events.

80.    It is this unwavering deference to Lu and the immense financial power he wields that has secured his continued role as Chairman. As a result of the Corporate Defendants' support and/or blatant disregard of Lu's predatory tactics, he was able to successfully rape and sexually assault Jane Doe.

81.    The Corporate Defendants, through employees, knew or should have known of Lu's inappropriate sexual behavior and risk to others, including Jane Doe, stemming from reports, formal and informal, dating back many years.

82.    Moreover, because Lu's serially sexually abusive behavior was so open and brazen throughout the Genimous Corporate structure, the Corporate Defendants had actual and constructive knowledge of this behavior.

83.    Lu's wealth, power within the company, and the Corporate Defendants' conformity allowed him to build a protective shield around his behavior and make it corporately acceptable. Despite its knowledge, the Corporate Defendants deliberately did nothing to prevent or even formally inquire into Lu's sexually abusive behavior. The Corporate Defendants intentionally failed to conduct this basic inquiry, because the Corporate Defendants knew that inquiry would cause a problem, including loss of employment or position for anyone who inquired or took any action to prevent Lu's behavior. Instead, the Corporate Defendants concealed, enabled and allowed Lu to continue his pattern of pervasive abuse. They knew of his prior assaults and propensity for sexual violence yet retained him as Chairman where he could act with impunity, and continued to host him as the man of honor at corporate parties and facilitated an environment where Lu could sexually abuse women, including Jane Doe without risk of consequence to him.

84.    Rather than question, report, or fire Lu, especially in light of the prior well-documented allegations, the agents, representatives, and employees of the Corporate Defendants instead chose to enable him.

85.    Corporate Defendants all became aware of Lu's rape of Jane Doe shortly after it occurred. Rather than take action against Lu, Corporate Defendants took affirmative actions to conceal the rape, including but not limited to instructing employees not to discuss it; instructing employees not to cooperate with law enforcement; causing employees to sign Non-Disclosure Agreements or similar documents restricting their ability to discuss the incident and/or punishing them for doing so; terminating or causing resignations for employees who knew about the rape of Jane Doe; disparaging or penalizing employees for Corporate Defendants who resigned because of Lu's rape of Jane Doe; and otherwise putting in place safeguards to protect against further dissemination, within or outside the Corporate Defendants, from being further disseminated.

86.     As further evidence of Corporate Defendants' efforts to ratify and condone Lu's sexual abuse of Jane Doe, counsel for Corporate Defendants instructed former employees not to cooperate with Jane Doe or her counsel about this matter.

87.     The real control of the Corporate Defendants rests with Hongda Lu, which includes utilizing corporate finances and resources to prepare for his sexual assaults, commit sexual assaults, and conceal his sexual assaults; Corporate Defendants protect Hongda Lu at all costs.

88.     As described above, Hongda Lu traveled from China to the United States, for Corporate Defendant Spigot's party, attended by employees of the remaining Corporate Defendants, wherein Lu used force to engage in non-consensual sex, and Corporate Defendants knowingly assisted, supported, or facilitated that sex knowing or in reckless disregard for the fact that forcible sex would be inflicted on a young women, (in this case Jane Doe), in order to financially benefit in numerous ways, including with the attendance at the party by the Chairman of the Board of the parent company Genimous, receiving a personal speech from the Chairman of the board of the parent company, receiving personal time for Corporate Defendants' employees and executives with the Chairman of the Board, remaining incorporated under parent company Genimous, maintaining employment for the employees of Corporate Defendants, and maintaining and retaining Lu as Chairman of the Board of parent company Genimous.

89.     In this civil sexual assault case, evidence of Lu's other sexual assaults is admissible under Fed. R. Evid. 415 to show his propensity to commit sexual assault, and the Corporate Defendants' knowledge thereof. Such evidence will include testimony from prior victims and witnesses to similar misconduct.

## COUNT I
## PARTICIPATING IN A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE
## TRAFFICKING VICTIMS PROTECTION ACT,
## U.S.C. §§ 1591(a)(1), 1595 AGAINST SPIGOT

90.     Plaintiff Jane Doe realleges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

91.     Defendant Spigot participated in this sex trafficking venture in violation of 18 U.S.C. § 1591(a)(2).

92.     Defendant Spigot knew Hongda Lu had, in the past, engaged in forcible sex against young women, at company events, especially where alcohol was being served, and that he for his attendance he expected to be treated as an untouchable authority figure with the unchecked ability to engage in any activities he desired, including sexual assault.

93.     Hongda Lu knowingly recruited, enticed, harbored, transported, obtained, maintained, and solicited Jane Doe knowing that he would use force or coercion to rape Jane Doe.

94.     Defendant SPIGOT hosted a holiday party, and invited Hongda Lu, a known serial sexual abuser of women and the Chairman of the Board of its parent company Genimous, and benefitted, financially or by receiving anything of value, from its participation in a venture with Hongda Lu, by assisting, supporting, or facilitating Hongda Lu's rape of Jane Doe, knowing or in reckless disregard for the fact that means of force, fraud, or coercion would be used to cause a young woman, in this case Jane Doe, to engage in commercial sex.

95.     Defendant Spigot, knowing Hongda Lu's reputation and propensity to engage in non-consensual forced sex with young women, especially in environments where excessive drinking is encouraged, paid for Hongda Lu's travel and hotel accommodations and assisted, supported, or facilitated Lu's forcible rape of Jane Doe, by inviting Hongda Lu to a corporate party where unlimited alcohol was being served, encouraging attendees to engage in extreme drinking,

allowing non-employee Jane Doe to become extremely intoxicated in the presence of Hongda Lu; honoring and glorifying Hongda Lu at the party despite his known abusive behavior; allowing a visibly intoxicated Jane Doe to walk out of the afterparty with Hondga Lu; and enabling a known predator Hongda Lu to transport Jane Doe to his hotel room for Lu to engage in forcible commercial sex.

96.    Defendant Spigot, a subsidiary company of Genimous, comprised of executives and employees, benefitted, financially or by receiving something of value from participating in a sex trafficking venture with Hongda Lu, in at least the following ways:

    a.    receiving the attendance at the party of Mr. Lu - the Chairman of the Board of the parent company Genimous;

    b.    receiving a personal speech from Mr. Lu—the Chairman of the board of the parent company;

    c.    receiving valuable personal time for Corporate Defendants' employees and executives with Mr. Lu—the Chairman of the Board;

    d.    continuing to receive employment, salary, and other employment based incentives; remaining incorporated under parent company Genimous; and (f) maintaining and retaining Lu as Chairman of the Board of parent company Genimous.

97.    Defendant Spigot hosted the event, to honor Hongda Lu, knowing that as long as Hongda Lu was enabled to commit sexual assault, that he would confer extraordinary value on Defendant Spigot, including his personal attendance at the office and holiday party, arguably the greatest value that could be conferred on Defendant Spigot.

98.     By virtue of Defendant Spigot's violations of 18 U.S.C. §§ 1591(a)(2), 1595, Defendant Spigot is liable to Jane Doe for the damages she sustained, punitive damages, and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Spigot for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

## COUNT II
## NEGLIGENCE AGAINST SPIGOT

99.     Plaintiff Jane Doe realleges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

100.    Defendant Spigot, along with other Defendants, controlled every aspect of this official Corporate Holiday party, including the attendance of Hongda Lu.

101.    Defendant Spigot paid for Hongda Lu's travel, hotel accommodations, and all other expenses while he was in Florida.

102.    Defendant Spigot promoted the official Holiday Party, discussed all aspects of the party and afterparty through texts and email communications; decorated and paid for the venues and bar tabs; provided transportation between the party and afterparty; and established Hongda Lu's hotel room to be just across the street from the afterparty.

103.    By hosting, organizing, providing unlimited drinks, transportation, and otherwise promoting a company sponsored holiday event open to employees and their invited guests, Defendant Spigot established a special relationship with all attendees – including Plaintiff – who were expressly invited to the holiday events which were under Defendant Spigot's control and for its benefit.

104.    Defendant Spigot owed a duty to exercise reasonable care for the safety of the invitees, including Plaintiff.

105.    Having actual and constructive knowledge that the Top Corporate Executive who they were honoring that night, Hongda Lu, was a serial sexual abuser of young women, and habitually sexually assaulted women at excessive drinking events, Defendant Spigot knew or should have known that inviting him to this event, and celebrating him as the man of honor, created a foreseeable risk of him committing a sexual assault.

106.    Despite this knowledge, Defendant Spigot failed to warn, supervise, or restrict his access to guests, in breach of the duty owed to Plaintiff.

107.    Additionally, by serving unlimited alcohol to guests at both the Spigot party and afterparty, in conjunction with its knowledge that Hongda Lu had a history of sexual assault against intoxicated young women, Defendant Spigot undertook a custodial or protective role over its guests, including Plaintiff.

108.    Under the circumstances and superior knowledge Defendant Spigot had to that of Plaintiff, Defendant Spigot owed Plaintiff a duty to protect her from Hongda Lu and to specifically warn her of Lu's dangerous propensities.

109.    Defendant Spigot breached the duties owed to Plaintiff.

110.    At the time of Spigot's negligence, Spigot knew or should have known the likelihood that it was creating an opportunity for Lu to commit intentional tortious conduct against women, including Jane Doe, and instead acted with reckless disregard for her safety, again ratifying and condoning Lu's conduct.

111.    As a result of the negligence of Defendant Spigot, Jane Doe was vaginally and anally raped by Lu in a hotel room paid for by Spigot or an affiliated company.

112.    Spigot's breaches of its legal duties were the proximate cause of physical and psychological injures to Jane Doe.

113.    As a direct and proximate result of Spigot's tortious conduct, Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses. These injures are permanent in nature and Plaintiff will continue to suffer these losses in the future.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Spigot for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

### COUNT III
### NEGLIGENT RETENTION/SUPERVISION
### AGAINST SPIGOT

114.    Plaintiff Jane Doe realleges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

115.    Defendant Spigot organized and hosted a company-sponsored holiday event at a local bar for its employees and their invited guests.

116.    The event was an official company function intended to promote goodwill and employee morale, and Defendant provided or authorized unlimited alcoholic beverages for attendees.

117.    Defendant knew, or in the exercise of reasonable care should have known, that its parent company's top executive, Hongda Lu, had a well-documented history of sexual misconduct,

predatory behavior, and inappropriate advances toward women, including younger female subordinates and guests at company-related events.

118. Despite this knowledge, Defendant permitted and encouraged Hongda Lu to attend the holiday party, to socialize freely with employees and guests, and to do so in an environment that the company knew would involve significant alcohol consumption and reduced inhibitions.

119. Defendant owed a duty to exercise reasonable care in supervising and controlling Hongda Lu's conduct to prevent foreseeable harm to others, including Plaintiff, a guest invited to the event.

120. Defendant breached that duty by:

a. Failing to warn Jane Doe of Lu's history of sexual misconduct;

b. Failing to monitor or restrict Lu's interactions with female attendees, including Jane Doe;

c. Failing to ensure that Lu was properly trained and adhered to the company's policies and procedures, and above all, understood his duty to use reasonable care to ensure the safety, care, and well-being of others;

d. Failing to properly supervise Lu to prevent him from isolating or leaving the premises with intoxicated women, including Plaintiff where he was almost certain to act in conformity with his known conduct of sexual assault; and,

e. Allowing an atmosphere of excessive drinking and diminished supervision despite knowing the risk of sexual harm posed by Hongda Lu.

121. Spigot's breaches of its legal duties were the direct—i.e., the but-for—cause of physical and psychological injures to Jane Doe. Without Spigot's breaches of legal duties, those

injuries would not have occurred as the injuries that have occurred were readily foreseeable to Spigot.

122.    As a direct and proximate result of Defendant's negligent supervision, Hongda Lu was able to isolate and sexually assault Plaintiff.

123.    Spigot acted with reckless disregard for the safety of Jane Doe who was within the zone of foreseeable harm from Spigot's negligent acts and omissions which foreseeably created substantial risk to Jane Doe.

124.    Because of Spigot's negligent failure to prevent physical harm, it is liable to Jane Doe for damages suffered as a direct and proximate result.

125.    As a direct and proximate result of Spigot's negligent supervision, Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Spigot for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

## COUNT V
## VICARIOUS LIABILITY
## AGAINST SPIGOT

126.    Plaintiff Jane Doe realleges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

127.    At the time of the 2023 Holiday Party, Spigot had actual or constructive knowledge that Lu had a propensity to engage in such sexually inappropriate behavior and negligently chose to disregard the same. Specifically, prior to him abusing Jane Doe, Spigot knew or should have known that Lu had engaged in at least the following acts of tortious conduct:

    a.  Lu sexually battered an Eightpoint employee on a company boat outing in the Cayman Islands;

    b.  Lu sexually battered a second Eightpoint employee during another company event in the Cayman Islands; and,

    c.  Lu sexually battered non-employees or employees of other businesses in which he was involved.

128.    Pertinently, a number of Spigot employees or executives were present at the Eightpoint Tech boat outing as well as the second event that took place in the Cayman Islands.

129.    Moreover, an internal complaint was made against Mr. Lu in 2019 by one of the Eightpoint Tech employees, which was directly handled by two different Spigot human resources employees.

130.    In addition to numerous Spigot employees, at least two other members of the Genimous Board of Directors, one Spigot executive and one Eightpoint executive, were present at the Spigot Holiday Party along with Chairman Lu.

131.    At the time of Spigot's negligent conduct, Spigot knew or should have known that it was creating an opportunity for Lu, a serial sexual predator, to commit sexual assault against women including Jane Doe.

132.    Spigot employees, including high level executives, rather than protect agaist the sexual assault, observed as Jane Doe became extremely intoxicated, watched as Hongda Lu began

flirting with Jane Doe, watched as Hongda Lu walked Jane Doe out of Skybar to his Hotel, and a Spigot executive walked to the Hotel with Hongda Lu and Jane Doe, who he recognized was too intoxicated to consent to sex, and watched as Hongda Lu took Jane Doe to his hotel to sexually assault her.

133.    Spigot is vicariously liable for the negligent acts of their employees including, but not limited to:

   a.    The failure of their employees with knowledge of Lu's propensity to engage in tortious sexual conduct to warn Jane Doe;

   b.    The failure of their employees with knowledge of Lu's propensity to engage in tortious sexual conduct to intervene and prevent Lu from leaving the company sanctioned event with Jane Doe;

   c.    The failure of a specific Spigot Executive to prevent or dissuade Lu from bringing Jane Doe back to his hotel room despite having knowledge of Lu's past tortious conduct and despite personally walking back to the hotel with Lu and Jane Doe; and,

   d.    The failure of that Spigot Executive to intervene or to report Lu's conduct upon witnessing Hongda Lu take Jane Doe to the hotel at a time when Jane Doe was noticeably too intoxicated to consent to sex.

134.    Spigot's breaches of its legal duties were the direct—i.e., the but-for—cause of physical and psychological injures to Jane Doe. Without Spigot's breaches of legal duties, those injuries would not have occurred as the injuries that have occurred were readily foreseeable to Spigot.

135.    Spigot acted with reckless disregard for the safety of Jane Doe who was within the zone of foreseeable harm from Spigot's negligent acts and omissions which foreseeably created substantial risk to Jane Doe.

136.    Because of Spigot's negligent failure to prevent physical harm, it is liable to Jane Doe for damages suffered as a direct and proximate result.

137.    As a direct and proximate result of Spigot's tortious conduct, Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses. These injuries are permanent in nature and Plaintiff will continue to suffer these losses in the future.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Spigot for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

## COUNT VI
## NEGLIGENCE AGAINST EIGHTPOINT

138.    Plaintiff Jane Doe realleges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

139.    At all times material hereto, Jane Doe maintained a special relationship with Spigot when she accepted an invitation to the Spigot Holiday Party, which was both planned and attended by Spigot and Eightpoint employees, including the Eightpoint CEO, who was also a member of the Genimous Board of Directions along with Lu.

140.    In October 2019, the Eightpoint CEO informed staff members, "our guests from Genimous China will be in the office starting around 9/9:30 in the morning. We'll be in the office

until lunchtime, then cutting out to show them some sights. Back in the office Friday morning. Be sure to introduce yourselves 😊 ." The recipients of this message include both of the female employees who were ultimately sexually assaulted by Lu during that trip to visit Eightpoint in the Cayman Islands.

141.    In another written exchange following the rape, the Eightpoint CEO wrote to his employee who had just been victimized by Lu saying, "Hongda mentioned he was joining you tonight for the party. Is that still the plan?" She nervously responded to her boss saying, "Preferably you keep him busy. . . Too draining for me to entertain him lol. . . I want my weekend off lol." The CEO later texted her, "Thanks again for chipping in to spend time with him. I really appreciate it," unknowingly commenting on the time that she spent with Lu when he raped her. That same man, the Eightpoint CEO and Genimous Board of Directors Member was also in attendance at the Spigot Holiday Party in 2023.

142.    At the time of the Holiday Party, Eightpoint had actual knowledge that Lu had a propensity to engage in such sexually inappropriate behavior and negligently chose to disregard the same. Specifically, prior to him abusing Jane Doe, Eightpoint knew that Lu had engaged in at least the following acts of tortious conduct:

   a.   Lu sexually battered an Eightpoint employee on a company boat outing in the Cayman Islands;

   b.   Lu sexually battered a second Eightpoint employee during another company event in the Cayman Islands; and,

   c.   Lu sexually battered a non-employee waitress at a business function in China.

143.    An internal complaint was made by one of the Eightpoint employees referenced above against Mr. Lu in 2019, which was investigated by both Eightpoint and Spigot employees and executives.

144.    At the suggestion of company employees, that same Eightpoint employee reported Lu to the Cayman Islands police, a fact to which Eightpoint was well aware.

145.    At the time of the report, Eightpoint undertook the duty to investigate the heinous claims that were made against Lu. During the course of that investigation, Eightpoint learned that this was not the first woman Lu had sexually assaulted. Despite obtaining that information, Eightpoint failed to act against Lu and instead facilitated a cover up of his behavior in willful disregard for the safety of others, including Jane Doe.

146.    At all times material hereto, Eightpoint employees were fully informed of Lu's modus operandi. They knew that Lu had made a habit of attending company functions, getting intoxicated, causing others to become intoxicated, and engaging in sexually abusive conduct towards women. These same Eightpoint employees knew that Lu would be present at the Spigot Holiday Party and that there would be excessive drinking at the party. With this knowledge, Eightpoint failed to put any measures in place to protect Jane Doe or any other invitee of the party from Lu's predatory behavior.

147.    Given the extensive knowledge of Eightpoint employees and executives regarding Lu's past sexually exploitative and abusive conduct, coupled with the fact that Eightpoint employees and executives were involved in the Holiday Party planning and were present at the Holiday Party with Lu, Eightpoint had a duty to warn Jane Doe of the dangerous propensities of Lu.

148.    In light of the comingled nature of the Holiday Party, which included Eightpoint employees and executives with knowledge of Lu's modus operandi and past conduct, Eightpoint owed Jane Doe a duty to:

    a.  Exercise reasonable care to ensure her safety and well-being;

    b.  Exercise reasonable care to avoid conduct that created a risk of harm;

    c.  Take reasonable precautions against foreseeable harm caused by the overservice of alcohol;

    d.  Take reasonable precautions against foreseeable harm caused by the misconduct of others;

    e.  Control foreseeable third-party conduct, like that of Lu; and,

    f.  Warn Jane Doe of the known dangerous propensities of Lu.

149.    At all times material hereto, Eightpoint breached its duty to exercise reasonable care to avoid conduct that created a risk of physical harm to Jane Doe by:

    a.  Failing to act objectively reasonable in failing to take precautions to prevent Lu's tortious conduct against females, including Jane Doe;

    b.  Providing financial support for Lu to attend and participate in the Holiday Party with knowledge of his systematic predatory behavior;

    c.  Failing to oversee Lu's interactions with guests at the Holiday Party;

    d.  Allowing Lu to force individuals to drink at a company sponsored event, including Jane Doe;

    e.  Failing to take reasonable precautions to limit the overservice of alcohol at the Holiday Party;

    f.  Failing to intervene to protect Jane Doe;

g.   Failing to have security on-site to protect Jane Doe;

h.   Failing to warn Jane Doe of Lu's known dangerous propensities; and,

i.   Failing to stop Lu from engaging in predatory sexual behavior towards women at company sponsored functions and events.

150.   At the time of Eightpoint's negligence, Eightpoint knew or should have known the likelihood that it was creating an opportunity for Lu to commit intentional tortious conduct against women, including Jane Doe, and instead acting with reckless disregard for her safety.

151.   Eightpoint's negligent acts and omissions left Jane Doe within the zone of foreseeable harm which created a substantial risk to Jane Doe.

152.   To make matters worse, the Eightpoint CEO saw a heavily intoxicated Jane Doe with Lu prior to the rape and failed to do anything to protect Jane Doe despite the fact that she was in an obviously heavily intoxicated state with a man that he personally knew to be a sexual predator.

153.   As a result of the negligence of Eightpoint, Jane Doe was vaginally and anally raped by Lu in a hotel room paid for by one of the Corporate Defendants.

154.   Eightpoint's breaches of its legal duties were the direct—i.e., the but-for—cause of physical and psychological injures to Jane Doe. Without Eightpoint's breaches of legal duties, those injuries would not have occurred.

155.   Because of Eightpoint's negligent failure to prevent physical harm, it is liable to Jane Doe for damage suffered as a direct and proximate result.

156.   As a direct and proximate result of Eightpoint's tortious conduct, Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of

dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses. These injures are permanent in nature and Plaintiff will continue to suffer these losses in the future.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Eightpoint for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

**COUNT VII**
**VICARIOUS LIABILITY**
**AGAINST EIGHTPOINT**

157.    Plaintiff Jane Doe realleges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

158.    In October 2019, the Eightpoint CEO informed staff members, "our guests from Genimous China will be in the office starting around 9/9:30 in the morning. We'll be in the office until lunchtime, then cutting out to show them some sights. Back in the office Friday morning. Be sure to introduce yourselves 😊." The recipients of this message include both of the female employees who were ultimately sexually assaulted by Lu during that trip to visit Eightpoint in the Cayman Islands.

159.    In another written exchange following the rape, the Eightpoint CEO wrote to his employee who had just been victimized by Lu saying, "Hongda mentioned he was joining you tonight for the party. Is that still the plan?" She nervously responded to her boss saying, "Preferably you keep him busy. . . Too draining for me to entertain him lol. . . I want my weekend off lol." The CEO later texted her, "Thanks again for chipping in to spend time with him. I really appreciate it," unknowingly commenting on the time that she spent with Lu when he raped her. That same

man, the Eightpoint CEO and Genimous Board of Directors Member was also in attendance at the Spigot Holiday Party in 2023.

160.    At the time of the Holiday Party, Eightpoint had actual knowledge that Lu had a propensity to engage in such sexually inappropriate behavior and negligently chose to disregard the same. Specifically, prior to him abusing Jane Doe, Eightpoint knew that Lu had engaged in at least the following acts of tortious conduct:

      a.  Lu sexually battered an Eightpoint employee on a company boat outing in the Cayman Islands;

      b.  Lu sexually battered a second Eightpoint employee during another company event in the Cayman Islands; and,

      c.  Lu sexually battered a non-employee waitress at a business function in China.

161.    An internal complaint was made by one of the Eightpoint employees referenced above against Mr. Lu in 2019, which was investigated by both Eightpoint and Spigot employees and executives.

162.    At the suggestion of company employees, that same Eightpoint employee reported Lu to the Cayman Islands police, a fact to which Eightpoint was well aware.

163.    At the time of the report, Eightpoint undertook the duty to investigate the heinous claims that were made against Lu. During the course of that investigation, Eightpoint learned that this was not the first woman Lu had sexually assaulted. Despite obtaining that information, Eightpoint failed to act against Lu and instead facilitated a cover up of his behavior in willful disregard for the safety of others, including Jane Doe.

164.    At all times material hereto, Eightpoint employees were fully informed of Lu's modus operandi. They knew that Lu had made a habit of attending company functions, getting

intoxicated, causing others to become intoxicated, and engaging in sexually abusive conduct towards women. These same Eightpoint employees knew that Lu would be present at the Spigot Holiday Party and that there would be excessive drinking at the party. With this knowledge, Eightpoint failed to put any measures in place to protect Jane Doe or any other invitee of the party from Lu's predatory behavior.

165.    Given the extensive knowledge of Eightpoint employees and executives regarding Lu's past sexually exploitative and abusive conduct, coupled with the fact that Eightpoint employees and executives were involved in the Holiday Party planning and were present at the Holiday Party with Lu, Eightpoint had a duty to warn Jane Doe of the dangerous propensities of Lu.

166.    Based on knowledge of Eightpoint CEO as detailed above, Eightpoint is vicariously liable for the negligent acts of their CEO and other employees who were present at the Spigot Holiday Party including, but not limited to:

    a.    The failure of their employees with knowledge of Lu's propensity, including the Eightpoint CEO, to engage in tortious sexual conduct to exercise reasonable care;

    b.    The failure of their employees with knowledge of Lu's propensity, including the Eightpoint CEO, to engage in tortious sexual conduct to warn Jane Doe;

    c.    The failure of their employees with knowledge of Lu's propensity, including the Eightpoint CEO, to engage in tortious sexual conduct to intervene and prevent Lu from leaving the company sanctioned event with Jane Doe; and,

    d.    The failure to properly investigate Lu in 2019 after undertaking a duty to do so.

167.    At the time of Eightpoint's negligent conduct, Eightpoint both realized and should have realized the likelihood that it was creating an opportunity for Lu, a serial sexual predator, to commit intentional tortious conduct against women including Jane Doe.

168.    Eightpoint's breaches of its legal duties were the direct—i.e., the but-for—cause of physical and psychological injures to Jane Doe. Without Eightpoint's breaches of legal duties, those injuries would not have occurred as the injuries that have occurred were readily foreseeable to Eightpoint.

169.    Eightpoint acted with reckless disregard for the safety of Jane Doe who was within the zone of foreseeable harm from Eightpoint's negligent acts and omissions which foreseeably created substantial risk to Jane Doe.

170.    Because of Eightpoint's negligent failure to prevent physical harm, it is liable to Jane Doe for damages suffered as a direct and proximate result.

171.    As a direct and proximate result of Eightpoint's tortious conduct, Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses. These injures are permanent in nature and Plaintiff will continue to suffer these losses in the future.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Eightpoint for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

## COUNT VIII
## NEGLIGENCE RETENTION
## AGAINST GENIMOUS

172.    Plaintiff Jane Doe reallges and incorporates by reference paragraphs 1-89, as if fully set forth in this Count.

173.    Defendant, Genimous, is the parent company of the Corporate Defendants.

174.    Hongda Lu is the Chairman of the Board of Genimous Technology Co., Ltd., the parent company of Defendant, Genimous.

175.    At all times material hereto, the Board of Directors of Genimous Technology Co., Ltd. included at least one Spigot executive and one Eightpoint Executive, both of whom were present at the Spigot Holiday Party along with the Chairman, Lu.

176.    At all times material hereto, Genimous assumed knowledge regarding Lu's predatory behavior and modus operandi directly from Chairman Lu himself, from Board Member and Eightpoint's CEO, and from various Spigot Executives, including another Genimous Board Member.

177.    At the time of the 2023 Holiday Party, Genimous had actual or constructive knowledge that Lu had a propensity to engage in sexually inappropriate behavior and negligently chose to disregard the same. Specifically, prior to Lu abusing Jane Doe, Genimous knew or should have known that Lu had engaged in at least the following acts of tortious conduct:

   a.  Lu sexually battered an Eightpoint employee on a company boat outing in the Cayman Islands;

   b.  Lu sexually battered a second Eightpoint employee during another company event in the Cayman Islands; and,

   c.  Lu sexually battered a non-employee waitress at a business function in China.

178.    Employees of both Corporate Defendants were aware of the incidents outlined above as employees of both Eightpoint and Spigot were present for both Cayman Islands company events listed above.

179.    In a written exchange following the rape of the woman referenced in paragraph 185(b), the Eightpoint Tech CEO wrote, "Hongda mentioned he was joining you tonight for the party. Is that still the plan?" She nervously responded to her boss saying, "Preferably you keep him busy. . . Too draining for me to entertain him lol. . . I want my weekend off lol." The CEO later texted her, "Thanks again for chipping in to spend time with him. I really appreciate it," unknowingly commenting on the time that she spent with Lu when he raped her. Shortly thereafter, she filed a formal complaint and reported Lu to the Cayman Islands police. The Eightpoint CEO was made aware of both and the internal complaint was handled by both Spigot and Eightpoint employees.

180.    In addition to failing to take action against Lu to keep his employees and others safe, that same man, the Eightpoint CEO and fellow Genimous Board of Directors Member, was in attendance at the Spigot Holiday Party with Lu in 2023.

181.    Despite such actual or constructive knowledge of Lu's predatory sexual behavior, Genimous negligently retained Lu in a position that gave him unique power over both employees and non-employees such as Jane Doe, in his role as Chairman.

182.    Because of Genimous's negligent retention of Lu, he was able to sexually batter Jane Doe, and Genimous is now liable to Jane Doe for damages suffered as a direct and proximate result.

183.    At all relevant times, Genimous acted with reckless disregard for the safety of Jane Doe.

184.    As a direct and proximate result of Genimous's tortious conduct, Plaintiff has in the past suffered and, in the future, will continue to suffer physical injury, pain, emotional distress, psychological trauma, mental anguish, humiliation, embarrassment, loss of self-esteem, loss of dignity, invasion of her privacy and a loss of her capacity to enjoy life, as well as other damages. Plaintiff incurred medical and psychological expenses. These injures are permanent in nature and Plaintiff will continue to suffer these losses in the future.

**WHEREFORE**, Plaintiff, Jane Doe, demands judgment against Defendant Genimous for damages in excess of the jurisdictional limits of this Court, punitive damages, costs, and such other and further relief as this Court deems just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

Dated:  November 25, 2025

Respectfully Submitted,

By: <u>*/s/ Bradley J. Edwards*</u>
Bradley J. Edwards
Brittany N. Henderson
Edwards Henderson
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
(954)-524-2820
Fax: (954)-524-2822
Email: brad@cvlf.com
        brittany@cvlf.com
        ecf@cvlf.com

*Attorneys for Plaintiff*