UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JANE DOE,

Plaintiff,

v. Case No: 2:25-cv-1091-SPC-KRH

EIGHTPOINT TECH TECHNOLOGIES LTD. SEZC, and EIGHTPOINT TECH INTERACTIVE, INC. f/k/a Spigot, Inc.,

Defendants.

---

**OPINION AND ORDER**

Before this Court are three motions to dismiss: one filed by Eightpoint Interactive, Inc. f/k/a Spigot, Inc. ("Spigot") under Federal Rule of Civil Procedure 12(b)(6) (Doc. 52) and two filed by Eightpoint Technologies Ltd. SEZC ("Eightpoint Tech")—one under Rule 12(b)(2) for lack of personal jurisdiction (Doc. 53) and one under Rule 12(b)(6) (Doc. 54). Plaintiff Jane Doe responded to each. (Docs. 56, 57, 58). For the below reasons, the Court denies Spigot's motion, grants Eightpoint Tech's Rule 12(b)(6) motion, and denies without prejudice Eightpoint Tech's Rule 12(b)(2) motion.

## BACKGROUND[1]

Plaintiff brings this action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and state law negligence theories against Eightpoint Tech and Spigot. (Doc. 51). Defendants are subsidiaries of Genimous Technology Co., Ltd. ("Genimous"). Non-party Hongda Lu is the chairman of Genimous. In December 2023, Lu visited Spigot's Fort Myers office where he provided employees with a company update. Defendants held a joint company holiday party, which Lu attended. Although she was not a Spigot or Eightpoint Tech employee, Plaintiff was an invited guest to the party. The party included an open bar, drinking games, and excessive alcohol consumption. Plaintiff became inebriated. Once the holiday party ended, the festivities continued at a local bar for a company-sanctioned afterparty. Spigot had a private table reserved and ordered bottle service.

As the party began winding down, Plaintiff intended to head to a house with several of Defendants' employees. However, Lu, recognizing Plaintiff's heavily intoxicated state, intervened. He steered Plaintiff away and walked her to his hotel across the street, where Plaintiff believed she would be driven to the intended house. Instead, Lu brought Plaintiff to his hotel room, where

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

Plaintiff vomited and eventually passed out. Lu took advantage of Plaintiff's inebriated state and sexually assaulted her. By the next morning, he was already on his way back to China.

According to Plaintiff, this holiday party and her sexual assault are part of a larger pattern. Defendants maintain a company culture of excessive partying and drinking. They routinely threw parties and other corporate events centered on excessive drinking and rowdy behavior. The purpose of these parties was to enable Lu's sexual proclivities. Lu had previously sexually assaulted women at company events, including two of Defendants' employees. Defendants knew of Lu's sexual conduct, yet they continued to enable it by inviting him to the company events with women and excessive alcohol and subsequently concealing his crimes. In exchange for catering to his sexual proclivities, Defendants received the benefit of Lu's presence at corporate events, his guidance and personal mentorship, continued employment, and the financial support and corporate lifeline that comes with allegiance to Lu.

Based on the foregoing, Plaintiff brings claims against Spigot and Eightpoint Tech for violation of the TVPRA (Counts I and V), negligence (Counts II, and VI), and vicarious liability (Counts IV and VII). Plaintiff also brings a negligent retention/supervision claim against Spigot only (Count III). Defendants move to dismiss each claim, arguing Plaintiff fails to state a claim.

(Docs. 52, 54). And Eightpoint Tech argues lack of personal jurisdiction. (Doc. 53).

## LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Bare "labels and conclusions, and a formulaic recitation of the elements of a cause of action," do not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court should dismiss a claim when a party does not plead facts that make the claim facially plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557).

## ANALYSIS

### I. Spigot's Motion to Dismiss

The Court need not address Spigot's motion. When responding to Plaintiff's initial complaint (Doc. 1), Spigot moved to dismiss and strike the complaint, arguing that Plaintiff improperly used pseudonyms when identifying herself and that the complaint included scandalous and bellicose

language. (Doc. 37). It never moved to dismiss Plaintiff's claims on the merits, even though the claims against Spigot were substantively the same as the ones alleged in the amended complaint. So, Plaintiff argues Spigot forfeited its right to raise the arguments in its present motion to dismiss.[2] (Doc. 56 at 3–4). The Court agrees.

Federal Rule of Civil Procedure 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Spigot's dismissal arguments that it now raises—that Plaintiff fails to state a claim—were available to Spigot when it filed its prior motion. That Plaintiff filed an amended complaint does not revive Spigot's ability to raise the previously available arguments. *See United Fire & Cas. Co. v. Progressive Express Ins. Co.*, No. 6:19-cv-1049-Orl-41EJK, 2020 WL 11421205, at *2 (M.D. Fla. June 15, 2020) ("[T]he filing of an amended complaint does not revive Defendant's ability to file a motion to dismiss for failure to state a claim because this defense was available but omitted from its earlier motion."). And the motion does not fall under either of the exceptions—Rule 12(h)(2) or (3). As such, Spigot forfeited its arguments in its motion to dismiss. So, the Court denies Spigot's motion. *See Kindred Hosps.*

[2] Spigot never moved for a reply brief to respond to Plaintiff's argument. So the Court treats it as unopposed.

*E., LLC v. Med. Mut. Servs., LLC*, No. 8:23-CV-1075-KKM-CPT, 2025 WL 2374027, at *9 (M.D. Fla. June 11, 2025) (finding Rule 12(g)(2) precluded the defendant's Rule 12(b)(6) argument that could have been, but was not, raised in prior motion to dismiss).

## II. Eightpoint Tech's Rule 12(b)(6) Motion[3]

### A. TVPRA (Count V)

The TVPRA criminalizes various acts involved in the sex trafficking of minors or adults by force, fraud, or coercion. *See* 18 U.S.C. § 1591. Specifically, the statute "makes it a crime to 'knowingly' harbor or solicit a person for commercial sex while 'knowing . . . that means of force, threats of force, fraud, coercion . . ., or any combination of such means will be used to cause the person to engage in a commercial sex act." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (quoting 18 U.S.C. § 1591(a)). It also "prohibits anyone from knowingly 'benefit[ting], financially or by receiving anything of value' from 'knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).'" *Id.* (quoting 18 U.S.C. §§ 1591(a)(2), (e)(4)).

---

[3] Generally, a court should address personal jurisdiction before reaching the merits. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims."). But sometimes, determining whether specific jurisdiction exists under the long-arm statute requires determining whether a valid claim is stated. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action."). Because personal jurisdiction hinges on whether Plaintiff states a claim, the Court tackles the merits first.

Although the TVPRA is a criminal statute, it allows victims of sex trafficking under the statute to bring a civil action for violation of the statute "against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). Thus, the statute creates two species of liability: (1) against the perpetrator for violating the statute, and (2) against anyone who knowingly benefits from participation in a venture that engaged in a violation of the statute. Plaintiff does not bring this action against the perpetrator—Lu. Instead, it appears she brings it against Eightpoint Tech for knowingly benefitting from its participation in a sex trafficking venture with Lu that violated the TVPRA.[4]

To state a beneficiary claim, Plaintiff must plausibly allege Eightpoint Tech: "'(1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) [Eightpoint Tech] had constructive or actual knowledge that the undertaking or enterprise

[4] Plaintiff's claim is not entirely clear. She titles count V as a violation of 18 U.S.C. § 1591(a)(1)—which is the perpetrator liability—but then alleges Eightpoint Tech "participated in this sex trafficking venture in violation of 18 U.S.C. § 1591(a)(2)." (Doc. 51 at 33). But given the overall allegations, the Court presumes Plaintiff intends to bring a beneficiary/venture claim against Eightpoint Tech. Still, she should rectify this discrepancy in her second amended complaint.

violated the TVPRA as to the plaintiff.'" *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1268 (11th Cir. 2026) (quoting *Red Roof Inns*, 21 F.4th at 726).

Seeking to dismiss Plaintiff's TVPRA claim, Eightpoint Tech raises several arguments. It argues Plaintiff fails to allege a "commercial sex act," that Eightpoint Tech participated in a sex trafficking venture, that Eightpoint Tech "knowingly benefitted" from participating in the venture, or that Eightpoint Tech had actual or constructive knowledge that it was participating in the venture. (Doc. 54). The Court addresses each argument in turn.

Eightpoint Tech first argues Plaintiff fails to allege a "commercial sex act." (*Id.* at 7–8). The term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). "[B]ecause of the phrase 'on account of,' there must be 'a causal relationship between the thing of value and the sex acts.'" *Doe v. Ford*, No. 26-CV-20670, 2026 WL 2338558, at *5 (S.D. Fla. Aug. 13, 2026) (quoting *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1231 (M.D. Fla. 2023)). Meeting this threshold, however, does not require a direct quid pro quo between the sex act and the value. *See Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1166 (N.D. Ala. 2022); *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 772 (C.D. Cal. 2024) (explaining a commercial sex act "does not require a bargained for exchange").

Plaintiff does not allege she received any value for the sexual assault—*i.e.*, the sex act. Rather, she alleges Eightpoint Tech received value in the form of Lu's presence (as the parent company's chairman) at the party, a personal speech from Lu, his personal time, Eightpoint Tech employees' continued employment, and maintaining Lu as the chairman of Genimous (the parent company). (Doc. 51 ¶ 165). In other words, Eightpoint Tech received the benefit of Lu or, put differently, being held in Lu's personal favor. So, the question is whether this value to Eightpoint Tech was "on account" of the sex act.

Plaintiff links the value and her sexual assault together by pointing to Eightpoint Tech's holiday party at which excessive alcohol consumption was encouraged. Essentially, Plaintiff's theory is that, in exchange for Lu's personal favor, Eightpoint Tech threw a party to which Plaintiff was invited and at which excessive alcohol was encouraged. In other words, but-for the party that Eightpoint Tech held for Lu, she would not have been sexually assaulted. She further alleges this chain of events was foreseeable given Lu's prior instances of sexual assault at Eightpoint Tech's parties.

Though a close call, simply being invited as a guest to the bacchanal is not enough. It is currently too far of a stretch to suggest that an invitation from an unknown source with unknown intentions raises a reasonable inference that Lu's personal favor was received on account of the sexual

assault. *Treminio*, 649 F. Supp. 3d at 1231. And while Eightpoint Tech argues it would have received the alleged value—Lu's personal favor—regardless of whether Doe was sexually assaulted, this is a factual question not appropriate at this stage. *Treminio v. Crowley Mar. Corp.*, 707 F. Supp. 3d 1234, 1248 (M.D. Fla. 2023) (concluding that whether the value caused the sex act "is an issue for a jury to determine").

Eightpoint Tech next argues Plaintiff fails to allege it had knowledge of the purported benefit—*i.e.*, "knowingly benefitted." To satisfy this element, Plaintiff "must allege that [Eightpoint Tech] knew it was receiving some value from participating in the alleged venture." *Red Roof Inns*, 21 F.4th at 724. But Plaintiff fails to do so. While Plaintiff certainly alleges Eightpoint Tech knew of Lu's prior sexual misconduct and should have foreseen similar misconduct at the holiday party, there are no factual allegations indicating Eightpoint Tech knew it was receiving Lu's personal favor in exchange for hosting the party at which Plaintiff was sexually assaulted.[5] For all intents and purposes,

[5] At least one court has held that a plaintiff can satisfy the "knowingly benefited" element by alleging "culpable assistance" through allegations of a "continuous business relationship" between the trafficker and the participant. *See Weiner v. Wyndham Hotels & Resorts, Inc.*, No. 2:25-CV-120-JES-DNF, 2026 WL 120224, at *2 (M.D. Fla. Jan. 16, 2026). To arrive at this conclusion, *Weiner* relies on a Seventh Circuit case, *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559 (7th Cir. 2023). But in *Salesforce*, the court applied the "culpable assistance" standard to an entirely different element of a TVPRA claim—participation in a venture. *Salesforce*, 76 F.4th at 558–59. And even then, the Eleventh Circuit has distinguished its approach to the "participation in a venture" element from the Seventh Circuit's approach in *Salesforce*. *See Northbrook Indus.*, 171 F.4th at 1268–69 (11th Cir. 2026) (noting "the Seventh Circuit does not share our interpretation of participation in a venture"). So, the Court declines to apply the "culpable assistance" standard here.

Eightpoint Tech believed the alleged value—Lu's speech, attendance at the party, and their continued employment—was just normal business operation. So, Plaintiff fails to allege Eightpoint Tech "knowingly benefitted" from its participation in the venture.

Moving along, Plaintiff alleges Eightpoint Tech "participated in [a] sex trafficking venture[.]" (Doc. 41 ¶ 160). Eightpoint Tech argues Plaintiff fails to allege its participation in any such venture. Satisfying this element "requires a showing that a defendant took part in a common undertaking or enterprise involving risk and potential profit." *Northbrook Indus.*, 171 F.4th at 1268 (citations omitted). The defendant "must take part in a common enterprise to the extent that they share legal risks and potential profits with traffickers." *Id.* Plaintiff also fails to satisfy this element.

In the hotel trafficking context, the Eleventh Circuit has explained "[m]erely renting a hotel room to a trafficker with actual or constructive knowledge of his trafficking does not constitute 'participation in a venture[.]'" *Id.* at 1269. But Plaintiff alleges essentially the equivalent here. She claims Eightpoint Tech hosted the party where she was sexually assaulted, knowing Lu's history of sexual assault. But like a hotel operator renting out a room, Eightpoint Tech merely hosting a party is not enough. There must be "something more" that suggests shared "profits or risks." *Id.* at 1269, 1271.

That's not all. Eightpoint Tech's involvement in the party is not established. Plaintiff broadly alleges Eightpoint Tech "plann[ed], authoriz[ed], fund[ed], supervis[ed], and participat[ed] in the" holiday party. (Doc 51 ¶ 32). But any specifics pertain to Spigot. For instance, she alleges that "employees, agents, and representatives of Defendant Spigot were included on a stream of emails regarding preparation for the party, the itinerary, vendors, and pre-arranged transportation." (*Id.* ¶ 77). "Every last detail of the itinerary had been thought of and discussed between the venues and *Defendant Spigot* beforehand, further validating that the entire night was a *Defendant Spigot sponsored event*." (*Id.* ¶ 78 (emphasis added)). And tellingly, the party was titled the "'Spigot Swanky Speakeasy' Holiday Party," (*id.* ¶ 75), and Plaintiff frequently refers to it as the "Spigot Holiday Party" and "Spigot afterparty" at which "Defendant Spigot had its own table purchased and took over the bar." (*Id.* ¶¶ 83–86). So, other than a few employees attending the party, Eightpoint Tech's participation in this purported venture is unclear. Thus, Plaintiff fails to satisfy the participation in a venture element.

Finally, Eightpoint Tech argues Plaintiff fails to allege it had actual or constructive knowledge that it was participating in a venture. "Since the 'participation' and 'venture' components are not sufficiently plead, the actual or constructive knowledge of participation in such a venture cannot be plausibly pled either." *Weiner*, 2026 WL 120224, at *4. What's more, Plaintiff

cannot allege Eightpoint knew the venture in which it purportedly participated violated the TVPRA as to Plaintiff because she has not shown Lu violated the TVPRA.

It is unclear how Lu violated § 1591(a). Plaintiff's theory appears to be that Lu used the holiday party to intoxicate women so they would be easy targets to steer towards his hotel room. The factual allegations, however, fall short. While Plaintiff alleges Lu transported her by steering her towards the Luminary, she fails to allege how "force, threats of force, fraud, coercion, . . . or any combination of such means" were used to do so. 18 U.S.C. § 1591(a)(2). What's more, her reliance on the open bar misses the mark. There are no allegations that Lu forced Doe to drink more alcohol. To the contrary, Plaintiff alleges she "was *encouraged* to engage in excessive drinking." (Doc. 51 ¶ 81 (emphasis added)). As currently plead, Lu's conduct does not rise to the level of trafficking under the TVPRA. So, Plaintiff fails to show the alleged venture violated the TVPRA, let alone that Eightpoint knew that it did.

Undoubtedly, the alleged conduct is reprehensible. However, not all instances of sexual assault rise to the level of sex trafficking. *See Doe v. Fitzgerald*, No. CV 20-10713-MWF (RAOx), 2022 WL 2784805, at *4 (C.D. Cal. May 13, 2022) (explaining "date rape is categorically reprehensible, but not all date rapes are meant to be punishable by a sex trafficking statute"). Based on how far Plaintiff stretches the "commercial sex act" definition and her failure

to plead every other aspect of a TVPRA claim, it appears this may not be a trafficking case. Even so, it is possible Plaintiff can adequately allege such a claim if given one more chance. So, the Court dismisses Count V without prejudice.

### B. Negligence (Count VI)

"To support a claim of negligence, a plaintiff must establish four elements: duty, breach, causation, and damages." *Schramm v. Adams Homes of Nw. Fla., Inc.*, 414 So. 3d 352, 355 (Fla. Dist. Ct. App. 2025) (citing *Ruth v. Guerrieri Mgmt., Inc.*, 397 So. 3d 781, 785 (Fla. Dist. Ct. App. 2024)). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 244 So. 3d 383, 393 (Fla. Dist. Ct. App. 2018) (citation omitted).

Plaintiff's negligence claim is a spinoff of her TVPRA claim. She alleges that Lu had a history of sexual assault, including two employees, of which Eightpoint Tech was well aware. Eightpoint Tech knew Lu's *modus operandi* was to attend company functions where women would be intoxicated and then engage in sexually abusive conduct toward them. Despite this knowledge, Eightpoint Tech failed to protect Plaintiff from Lu's predatory behavior. She alleges a special relationship existed between herself and Eightpoint Tech when she accepted the invitation to the holiday party. Given that Eightpoint Tech employees were involved in planning the holiday party and were present

at the party, she alleges that it owed her a duty to warn her of Lu's dangerous propensities. More specifically, she alleges Eightpoint Tech owed her a duty to:

- Exercise reasonable care to ensure her safety and well-being, and to avoid conduct that created a risk of harm;
- Take reasonable precautions against foreseeable harm caused by the overservice of alcohol;
- Take reasonable precaution against foreseeable harm caused by Lu; and
- Warn Plaintiff of Lu's known dangerous propensities.

Eightpoint Tech breached these duties by failing to warn her of Lu's propensities, allowing Lu to drink at the party, failing to supervise Lu, failing to limit the overservice of alcohol at the party, failing to intervene to protect Plaintiff, failing to have security on site, failing to prevent Lu from sexually assaulting her, and by providing financial support for Lu to attend and participate in the party. (Doc. 51 ¶¶ 169–79).

Moving to dismiss this claim, Eightpoint Tech argues it owed no duty to Plaintiff. (Doc. 54 at 13–19). The central inquiry in determining a duty is whether the "defendant's conduct created a foreseeable zone of risk, *not* whether the defendant could foresee the specific injury that actually occurred." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992). "To determine whether the risk of injury to a plaintiff is foreseeable under the concept of duty, courts must look at whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury, not simply whether it was within the

realm of any conceivable possibility." *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. Dist. Ct. App. 2022).

Generally, "a person ha[s] no duty to control the conduct of another or to warn those placed in danger by such conduct[.]" *Boynton v. Burglass*, 590 So. 2d 446, 448 (Fla. Dist. Ct. App. 1991); *see also K.M. ex rel. D.M. v. Publix Super Markets, Inc.*, 895 So. 2d 1114, 1117 (Fla. Dist. Ct. App. 2005) ("The general rule is that a party has no legal duty to prevent the misconduct of third persons."). "[A]n exception to that general rule can arise when there is a special relationship between the defendant and the person whose behavior needs to be controlled or the person who is a foreseeable victim of that conduct." *Boynton*, 590 So. 2d at 448; *see also K.M.*, 895 So. 2d at 1118 ("When this court has recognized a duty to take precautions against the criminal acts of third parties, it has required the existence of a 'special relationship.'").

Eightpoint Tech argues it owed no duty to control Lu or warn Plaintiff of the potential danger she faced from Lu's conduct because no special relationship exists. Plaintiff, in her response, does not contend a special relationship exists. Rather, she argues she does not need to allege a special relationship because Eightpoint Tech's own affirmative conduct created a foreseeable risk that Lu would harm her. (Doc. 58 at 10–12).

An overarching problem is that the basis of Plaintiff's negligence claim is unclear. Although she argues in her response that she does not need to show

a special relationship exists, her complaint indicates that is precisely what she seeks to do. Specifically, she alleges she "maintained a special relationship with Spigot when she accepted an invitation to the Spigot Holiday Party[.]" (Doc. 51 ¶ 169). Apart from the fact she alleges a relationship with the wrong Defendant, the allegation suggests she intends to allege a duty based on a special relationship. And given she makes no effort to defend the existence of a special relationship in her response, the Court presumes she cannot.

That said, Plaintiff is correct she need not allege a special relationship to maintain a negligence claim against Eightpoint Tech. Section 302B of the Restatement (Second) of Torts is illustrative. This section provides that "[a]n act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." Restatement (Second) of Torts § 302B (1965). Comment e further elaborates that situations may arise in which an actor "is required to anticipate and guard against the intentional, or even criminal, misconduct of others." *Id.* at cmt. e. Such situations "arise where the actor is *under a special responsibility* toward the one who suffers the harm . . .; *or* where the actor's *own affirmative act* has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account." *Id.* (emphasis added). So clearly, a special

relationship is not the sole means of establishing a duty to protect from third-parties. *See also Knight v. Merhige*, 133 So. 3d 1140, 1148 (Fla. Dist. Ct. App. 2014) (applying § 302B cmt. e). Rather, a defendant's own affirmative actions creating the dangerous situation may create a duty to protect.

More to the point, the Restatement provides examples of such situations giving rise to a duty, one of which is particularly relevant:

> Where the actor has brought into contact or association with the other a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct, under circumstances which afford a peculiar opportunity or temptation for such misconduct.

*Id.* at cmt. e(D). This example is in essence what Plaintiff purports to allege here. The crux of her entire case is that she was brought into contact with Lu when she was invited to the holiday party, Eightpoint knew Lu was likely to commit the sexual assault, and the circumstances of excessive alcohol consumption at the holiday party afforded Lu the opportunity for the sexual assault. Consistent with the Restatement, these allegations, if properly stated, indicate Eightpoint Tech owed Plaintiff a duty.

The problem for Plaintiff is she does not adequately allege the claim. She fails to allege Eightpoint Tech invited her to the holiday party. In fact, she does not allege who invited her at all, only that she "was invited." (Doc. 51 ¶ 76). If Eightpoint Tech did not invite her, then it cannot be said to have

"brought [her] into contact or association with" Lu. Restatement (Second) of Torts § 302B cmt. e(D).

In sum, it is unclear on what theory of negligence Plaintiff intends to proceed. But either way, the claim fails. So, the Court dismisses count VI without prejudice.[6] When filing her second amended complaint, she must make clear under which theory she brings her negligence claim.

### C. Vicarious Liability (Count VII)

Plaintiff brings a vicarious liability claim against Eightpoint Tech for its employees' negligent acts. She alleges that the employees had knowledge of Lu's propensity to engage in sexual misconduct yet failed to exercise reasonable care, warn Plaintiff, and prevent Lu from leaving the holiday party with Plaintiff. (Doc. 51 ¶ 196). She also alleges the employees failed to properly investigate Lu after his 2019 sexual assault after undertaking a duty to do so. (*Id.*). This claim easily fails.

To state a valid vicarious liability claim against Eightpoint Tech, Plaintiff needs to state a viable negligence claim against its employees. *See Clarke v. Carnival Corp.*, No. 26-20181-CIV, 2026 WL 1654842, at *5 (S.D. Fla. June 8, 2026) ("[T]here can be no vicarious liability negligence claim where a plaintiff fails to plead an underlying negligence claim."). Plaintiff falls well

[6] In moving to dismiss the negligence claim, Eightpoint Tech also raises some sort of corporate veil piercing argument, which the Court fails to understand. (Doc. 54 at 14–19). So, the Court does not bother to address it.

short of stating an underlying negligence claim against Eightpoint Tech employees.

To begin, Plaintiff broadly lumps together the "employees" conduct. Other than naming one specific employee—Cody Mahaffey—she fails to identify the employees who were purportedly negligent, which is an "essential part[] of any claim seeking to impose vicarious liability on an employer for an employee's negligence." *Masse v. MSC Cruises, S.A.*, 808 F. Supp. 3d 1312, 1321 (S.D. Fla. 2025) (dismissing vicarious liability claim because the plaintiff failed to identify any specific employee whose negligence caused his injury). If she cannot identify any other employee, then she must proceed on this claim only as to Mahaffey's alleged negligence.

As for Mahaffey's alleged negligence, she fails to provide factual support. She alleges Mahaffey failed to warn her of Lu's sexual propensities and to otherwise act with reasonable care. But there are no facts alleged that would impose such a duty on Mahaffey. It is unclear that Mahaffey invited Plaintiff to the holiday party. For all Mahaffey knew when he "watched as a helplessly intoxicated [Plaintiff] walked across the street with Lu" (Doc. 51 ¶ 89), Plaintiff was a random woman Lu met at the bar. She alleges no facts suggesting Mahaffey knew Plaintiff existed until that very moment. As discussed previously (*supra* section II.B), unless Mahaffey created the dangerous

condition (*i.e.*, by bringing Plaintiff into contact with Lu), or Mahaffey had a special relationship with Lu or Plaintiff, he did not owe Plaintiff a duty of care.

Additionally, Plaintiff alleges Mahaffey failed to properly investigate Lu's 2019 sexual assault after undertaking a duty to do so. But she provides no support for the proposition Mahaffey owed her a legal duty to investigate an incident completely unrelated to her.

Because Plaintiff fails to state an underlying negligence claim, her vicarious liability claim fails. The Court thus dismisses count VII without prejudice.

## III. Eightpoint Tech's Rule 12(b)(2) Motion

Eightpoint Tech also moves to dismiss the amended complaint for lack of personal jurisdiction. A federal court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015). The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal jurisdiction, supported by affidavits, the burden shifts back to the plaintiff to supply her own evidence supporting jurisdiction. *Stubbs*

*v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). To the extent the plaintiff's evidence conflicts with the defense's affidavits, the court construes all reasonable inferences in favor of the plaintiff. *Id.*

The Court need only address the long-arm statute. Plaintiff asserts personal jurisdiction over Eightpoint Tech under Fla. Stat. § 48.193. Pertinent here, the statute provides that a person is subject to the jurisdiction of Florida for any cause of action arising from "operating, conducting, engaging in, or carrying on a business" in Florida, "committing a tortious act within" Florida, and "causing injury to persons . . . within the state arising out of an act or omission by the defendant outside the state" if, at the time of injury, the defendant was engaged in solicitation or service activities in Florida or its products were used or consumed within Florida. Fla. Stat. §§ 48.193(1)(a)(1), (2), (6). Plaintiff invokes each of these provisions to establish personal jurisdiction. (Doc. 51 ¶ 24).

The Court first addresses whether Eightpoint Tech is engaged in business in Florida that would subject it to the state's jurisdiction. In the amended complaint, Plaintiff alleges an array of facts supporting this notion. (Doc. 51 ¶¶ 25–31). But Eightpoint Tech refuted each of these allegations through an affidavit from its President, Thomas Redford. (Doc. 53-1). As such, the burden shifted to Plaintiff to supply her own evidence supporting

jurisdiction. *Stubbs*, 447 F.3d at 1360. The only evidence Plaintiff provides are a handful of photos to demonstrate several Eightpoint Tech employees attended the holiday party—which was in Florida. (Doc. 57-1). But these photos do nothing to establish Eightpoint Tech's ongoing business in Florida.

Indeed, Plaintiff seems confused as to her burden. She argues that because Redford's affidavit conflicts with her allegations, the Court "must construe all reasonable inferences in Plaintiff's favor." (Doc. 57 at 10). But as explained above, this is untrue. The Court only construes inferences in her favor if her "complaint *and supporting evidence* conflict with" Redford's affidavit. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Because she provides no evidence that Eightpoint Tech conducts or engages in business in Florida, she fails to meet her burden.

Plaintiff next tries invoking Fla. Stat. § 48.193(1)(a)(6). This section extends jurisdiction over a defendant who "caus[es] injury to persons . . . within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either: (a) The defendant was engaged in solicitation or service activities within this state; or (b) Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use." *Id.*

In arguing this section applies, Plaintiff entirely ignores the latter portion. She asserts that "Eightpoint made out-of-state decisions to send Lu to Florida and empower him to act without restraint at Florida corporate events" which "predictably and directly resulted in injury in Florida." (Doc. 57 at 12). But she makes no effort to establish that, at the time of her injury, Eightpoint Tech "was engaged in solicitation or service activities" within Florida or that its products were used or consumed in Florida.[7] Fla. Stat. § 48.193(1)(a)(6). Indeed, § 48.193(1)(a)(6) is "Florida's 'product liability' provision." *Patt v. Volkswagen Grp. of Am., Inc.*, 688 F. Supp. 3d 1186, 1191 (S.D. Fla. 2023). So, its applicability here is confusing.

What's more, she claims the "act or omission" that caused her injury in Florida was when Eightpoint Tech "made out-of-state decisions." (Doc. 57 at 12). She provides no authority suggesting that simply making decisions constitutes an "act or omission" under the statute (and the Court doubts that it does). So, her attempt to invoke personal jurisdiction under § 48.193(1)(a)(6) also fails.

This leaves § 48.193(1)(a)(2)—committing a tortious act within the state. Plaintiff brings TVPRA,[8] negligence, and vicarious liability claims against

---

[7] Plaintiff alleges that Eightpoint Tech "engage[s] in technology and digital services." (Doc. 51 ¶ 26). But her alleged injuries do not arise from such services.

[8] The Court construes Plaintiff's TVPRA claim as a tort for purposes of analyzing § 48.193(1)(a)(2). *Cf. Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir.

Eightpoint Tech, essentially arguing that it set her up to be sexually assaulted and failed to intervene. Applying this section is more straightforward. But the problem is Plaintiff has yet to state a valid claim against Eightpoint Tech, as discussed above. "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808 (citations omitted). Until the Court determines whether Plaintiff can state a viable claim against Eightpoint Tech, it cannot determine whether it committed a tortious act within the state.[9]

In sum, the Court does not have personal jurisdiction over Eightpoint Tech under Fla. Stat. §§ 48.193(1)(a)(1) or (6). However, the question remains whether the Court has jurisdiction under § 48.193(1)(a)(2). The Court thus denies Eightpoint Tech's motion without prejudice.

Accordingly, it is hereby

**ORDERED:**

1. Spigot's Motion to Dismiss (Doc. 52) is **DENIED.**

---

2013) (determining whether a statutory trademark infringement was a tort committed within the state); *Kernel Recs. Oy v. Mosley*, No. 09-21597-CIV-TORRES, 2010 WL 2812565, at *3 (S.D. Fla. July 5, 2010) (same for copyright claim).

[9] Because the Court finds it cannot determine jurisdiction under the long-arm statute at this stage, it tables the due-process analysis for now.

2. Eightpoint Tech's Rule 12(b)(6) Motion to Dismiss (Doc. 54) is **GRANTED.** Counts V–VII are **DISMISSED without prejudice**.

3. Eightpoint Tech's Rule 12(b)(2) Motion to Dismiss (Doc. 53) is **DENIED without prejudice**.

4. On or before **October 8, 2026**, Plaintiff may file a second amended complaint that rectifies the foregoing deficiencies.

**DONE and ORDERED** in Fort Myers, Florida on September 24, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record